**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

| | | |
|---|---|---|
| FLORIDA RIGHT TO PRAY | : | |
| TOGETHER, JOHN LOUDEN, CITIZENS | : | |
| IN CHARGE & TRENTON DONN POOL, | : | |
| | : | Civil Action No _____ |
| Plaintiffs, | : | |
| | : | COMPLAINT |
| vs. | : | |
| | : | |
| LAUREL LEE, in her official capacity as | : | |
| FLORIDA SECRETARY OF STATE, and | : | |
| ASHLEY MOODY, in her official capacity | : | |
| as FLORIDA ATTORNEY GENERAL, | : | |
| | : | |
| Defendants. | : | |

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

This civil action challenges FLA. STAT. Title IX §§ 104.186, 100.371(3),

(4)(b), (6) and (7)(a) (2021) signed into law on June 7, 2019, and Florida

Administrative Code Rules 1S-2.009(6)(a)(1)-(3) and 1S-2.0091(2)(b) (hereinafter

collectively the "Challenged Statutes").  Plaintiffs respectfully seek prospective

emergency preliminary and permanent injunctive and declaratory relief against

Defendants' enforcement of the Challenged Statutes.

The Challenged Statutes target only paid petition circulators of initiative

petitions seeking to amend the Florida state constitution (hereinafter "Initiative

Petition" or "Initiative Petitions").  The challenged provisions do not apply to

either volunteer circulators of Initiative Petitions or any circulator (paid or unpaid)

collecting signatures for any other petition required to be filed with Defendant

Secretary of State necessary to secure access to the Florida ballot.

On their face, without any additional factual development, each of the

Challenged Statutes violate the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution imposing unequal treatment under

the laws of Florida on the exercise of a fundamental federal constitutional right.

Further, the Challenged Statutes, individually and in tandem, impose severe

burdens on rights guaranteed under the First and Fourteenth Amendments and are

not narrowly tailored to advance a compelling governmental interest.  In fact,

Plaintiffs have direct evidence that the new compensation ban imposed under FLA.

STAT. Title IX §104.186 (2021) for paid circulators of Initiative Petitions has the

effect of promoting petition fraud by lazy, inexperienced petition circulators

willing to execute fraudulent petition forms to meet minimum production

requirements necessary to secure an hourly paycheck – fraud nearly lacking from

highly trained, motivated and experienced professional petition circulators who

refuse to be remunerated by any method other than the number of valid signatures

collected and now made criminal by FLA. STAT. Title IX §104.186 (2021).

Further, the challenged compensation ban requires Plaintiffs to compensate paid

circulators of Initiative Petitions for fraudulent and invalid signatures at the same

rate as for valid signatures, without any permitted deduction in compensation for fraudulent signatures.

In support of the foregoing, Plaintiffs allege, based on information and belief, the following:

1.     This is a civil rights action brought under 42 U.S.C. § 1983 for prospective equitable declaratory and emergency preliminary and permanent injunctive relief declaring and enjoining enforcement of the Challenged Statutes as violative of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

2.     Specifically, Plaintiffs challenge the ban imposed by FLA. STAT. Title IX §104.186 (2021) (hereinafter the "Compensation Ban") on compensating circulators of Initiative Petitions based on the number of petition forms gathered as a severe and unconstitutional impairment of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution by: (a) reducing the pool of circulators available to collect Initiative Petition signatures, (b) making the collection of Initiative Petition signatures more expensive through increased signature collection and management costs, (c) increasing the time needed to collect the required number of Initiative Petition signatures, (d) reducing the total quantum of core political speech in the circulation of Initiative Petitions

and (e) making it less likely that a proponent of an Initiative Petition will secure access to the Florida ballot.

3.      Plaintiffs also challenge the Compensation Ban as a violation of the Equal Protection Clause of the Fourteenth Amendment because the Compensation Ban only targets the fundamental right of paid circulators of Initiative Petitions to engage in core political speech and not volunteer circulators of Initiative Petitions or circulators (paid or volunteer) of any other petition required to be filed with Defendant Secretary of State to secure access to the Florida ballot.

4.      Plaintiffs also challenge the registration requirement of FLA. STAT. Title IX §§100.371(3) (2021) and Florida Administrative Code Rule 1S-2.009(6)(a) & (a)(2) (hereinafter the "Registration Requirement") imposed on paid circulators of Initiative Petitions as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because the Registration Requirement only targets the fundamental right of paid circulators of Initiative Petitions to engage in core political speech and not volunteer circulators of Initiative Petitions or circulators (paid or unpaid) of any other petition required to be filed with Defendant Secretary of State to secure access to the Florida ballot.

5.      Plaintiffs also challenge the specific data collection requirement of the Registration Requirement imposed under FLA. STAT. Title IX §§100.371(4)(b) (2021) and Florida Administrative Code Rule 1S-2.009(6)(a)(1) which requires

that (only) paid circulators of Initiative Petitions publicly provide their name, permanent address, temporary address (if applicable) and date of birth to Defendant Secretary of State before they may circulate initiative petitions (hereinafter the "Data Collection Requirement") – all in violation of rights clearly established under the First and Fourteenth Amendments to the United States Constitution under the United States Supreme Court precedent in *Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182, 201-05 (1999).

6.     Plaintiffs also challenge the Data Collection Requirement as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because the Data Collection Requirement only targets the fundamental right of paid circulators of Initiative Petitions to engage in core political speech and not volunteer circulators of Initiative Petitions or circulators (paid or unpaid) of any other petition required to be filed with Defendant Secretary of State to secure access to the Florida ballot.

7.     Plaintiffs also challenge FLA. STAT. Title IX §§100.371(6) (2021) and Florida Administrative Code Rule 1S-2.009(6)(a)(3) requiring Defendant Secretary of State to print the name and address of paid circulators of Initiative Petitions on the front, lower right corner, of each petition page, in full view of any voter (hereinafter the "Identification Requirement") (*see* Exhibit #1, attached to this Complaint), in violation of rights clearly established under the First and Fourteenth

Amendments to the United States Constitution under the United States Supreme Court precedent in *Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182 (1999).

8.       Plaintiffs also challenge the Identification Requirement as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because the Identification Requirement only targets the fundamental right of paid circulators of Initiative Petitions to engage in core political speech and not volunteer circulators of Initiative Petitions or circulators (paid or unpaid) of any other petition required to be filed with Defendant Secretary of State to secure access to the Florida ballot.

9.       Plaintiffs also challenge Florida Administrative Code Rule 1S-2.0091(2)(b) which imposes on Plaintiffs Florida Right to Pray Together and Citizens in Charge, as an intended future sponsors of an Initiative Petition, financial liability for any fines imposed under FLA. STAT. Title IX §100.371(7)(a)(1) & (2) (2021) if paid circulators of an Initiative Petition fail to timely submit a petition form within 30 days after the voter signs the form (hereinafter the "Penalty") as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, because the Penalty is not imposed on a sponsor of an Initiative Petition (such as Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER and CITIZENS IN CHARGE) if a volunteer

petition circulator fails to timely submit a petition form within 30 days after the voter signs the form.  The Penalty, therefore, imposes a greater financial liability and burden on sponsors of an Initiative Petition employing paid circulators rather than volunteer circulators. Accordingly, the Penalty uniquely impairs the right of Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER and CITIZENS IN CHARGE, and all other sponsors of Initiative Petitions, by creating a greater financial liability and economic disincentive to exercise their clearly established right under the First and Fourteenth Amendments to the United States Constitution to compensate petition circulators as established by the United States Supreme Court in *Meyer v. Grant*, 486 U.S. 414 (1988).

10.    Plaintiffs also challenge the Penalty as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because the Penalty only targets and impairs the fundamental right of Plaintiffs to use paid circulators of Initiative Petitions by creating an unknown potential additional financial liability for the use of paid circulators of Initiative Petitions which is not also imposed on the use of volunteer circulators of Initiative Petitions.

11.    Plaintiffs also challenge all of the Challenged Statutes, in the aggregate and acting together, as a coordinated attack on the established fundamental right to use paid circulators to collect signatures for Initiative Petitions guaranteed under the First and Fourteenth Amendments to the United

States Constitution and in violation of the Supreme Court's decision in *Meyer v. Grant*, 486 U.S. 414 (1988).

## II.    JURISDICTION AND VENUE

12.    Jurisdiction lies in this Court under 28 U.S.C. §1331, providing that district courts shall have original jurisdiction over all civil actions arising under the Constitution of the United States.  Moreover, jurisdiction lies under 42 U.S.C. §1983 and 28 U.S.C. §1343(a), the jurisdictional counterpart of 42 U.S.C. §1983, as Plaintiff alleges violations of rights guaranteed to it under the First and Fourteenth Amendments to the United States Constitution.

13.    Venue is proper in the United States District Court for the Northern District of Florida under 28 U.S.C. §1391 as Defendants exercise their authority within this district and maintain their principal offices within this district and all of the operative acts and/or omissions have or will occur within this district.

## III.    THE PARTIES

14.    Plaintiff FLORIDA RIGHT TO PRAY TOGETHER is a registered political committee with Defendant Secretary of State seeking to qualify a proposed Initiative Petition to strictly limit the ability of state government officials to curtail religious gatherings.  Plaintiff FLORIDA RIGHT TO PRAY TOGETHER is currently headquartered at the residence of its president at 14125 Deep Lake Drive, Orlando, Florida in the county of Orange.

15.    Plaintiff FLORIDA RIGHT TO PRAY TOGETHER intends to

qualify their proposed Initiative Petition for the 2024 Florida general election

ballot.

16.    Plaintiff FLORIDA RIGHT TO PRAY TOGETHER has been advised

by professional petitioning firms Morning in America, LLC and Grassfire, LLC, as

well as, experienced professional petition campaign managers Tim Mooney and

Lee Vasche – all of whom have direct recent experience in managing Initiative

Petitions in Florida under the Challenged Statutes – that the Challenged Statutes

make it financially impracticable for Plaintiff to seek ballot access until

enforcement of the Challenged Statutes are either repealed by the state legislature

or, in the alternative, enforcement thereof enjoined and declared unconstitutional.

17.    Plaintiff FLORIDA RIGHT TO PRAY TOGETHER requires the

requested relief in this action before it can commit to raise and spend several

million dollars of donor funds to launch a petition drive for their Initiative Petition.

Plaintiffs require immediate relief in order to launch their petition drive as soon as

possible in order to be able to collect the required number of valid signatures to

secure ballot access for the 2024 general election ballot.

18.    Plaintiff FLORIDA RIGHT TO PRAY TOGETHER intends to hire

Morning in America, LLC and Tim Mooney to manage Plaintiff's petition drive to

secure access for its proposed Initiative Petition for the 2024 general election
ballot.

19.    Plaintiff FLORIDA RIGHT TO PRAY TOGETHER has been advised
by Morning in America LLC, Grassfire LLC, Tim Mooney and Lee Vasche that
the best professional petition circulators, routinely used by them, refuse to work in
Florida unless they can be compensated based on the number of valid signatures
collected and do not want to submit to the onerous Registration, Data Collection
and Identification Requirements challenged in this action.  Plaintiff FLORIDA
RIGHT TO PRAY TOGETHER has also been informed by Mr. Mooney and Mr.
Vasche that the best professional petition circulators refuse to provide the personal
information mandated under the Registration, Data Collection and Identification
Requirement – out of fear (recognized by the United States Supreme Court) the
personal information made public may subject a circulator to personal reprisals
from opponents of the proposed Initiative Petition they intend to circulate in
Florida.

20.    Plaintiff JOHN LOUDEN, a resident of the State of Florida, is the
chairman of Plaintiff FLORIDA RIGTH TO PRAY TOGETHER and resides at
14125 Deep Lake Drive, Orlando, Florida, 32826 in the County of Orange.

21.    Plaintiff JOHN LOUDEN has been advised by Morning in America,
Grassfire, Tim Mooney and Lee Vasche that the Challenged Statutes make it

nearly impossible for Plaintiff FLORIDA RIGHT TO PRAY TOGETHER to be able to qualify its' proposed Initiative Petition for the 2024 Florida general election ballot.

22.    Plaintiff JOHN LOUDEN has also been advised by Morning in America, Grassfire, Tim Mooney and Lee Vasche that the Initiative Petition proposed by Plaintiff FLORIDA RIGHT TO PRAY TOGETHER is likely to have sufficient economic resources to qualify for the 2024 general election ballot if Sponsors are able to hire the best professional petition circulators, such as Plaintiff POOL and compensate their professional petition circulators based on the number of valid signatures collected.

23.    Plaintiff CITIZENS IN CHARGE is: "an educational not-for-profit that is dedicated to protecting and expanding ballot initiative and referendums…." *See*, *Citizens in Charge v. Gale*, 810 F.Supp.2d 916 (2011).

24.    PLAINTIFF CITIZENS IN CHARGE is a not for profit 501(c)(4) organization headquartered at 4491 Cheshire Station Plaza, Suite 124, Woodbridge, VA 22193.

25.    The mission of Plaintiff CITIZENS IN CHARGE is to expand the right of initiatives and referendums and to defend the process from unconstitutional attacks by state legislators who resent the right of citizens to usurp their legislative power.

26.    Plaintiff CITIZENS IN CHARGE actively opposed the passage of the Challenged Statutes.

27.    Plaintiff CITIZENS IN CHARGE intends to sponsor an Initiative Petition to establish a statutory initiative process in the State of Florida for the 2024 general election ballot.

28.    Plaintiff CITIZENS IN CHARGE intends to hire Morning in America, LLC to manage its proposed Initiative Petition to establish the right of a legislative initiative process in the State of Florida.

29.    Plaintiff TRENTON DONN POOL (hereinafter Plaintiff "POOL"), is a professional petition circulator and is a resident of the State of Texas, residing at 1000 Fiesta Street, Austin, Texas.

30.    Plaintiff POOL is president of the petition circulator firms Benezet Consulting, LLC and Accelevate2020, LLC.

31.    Plaintiff POOL is willing to circulate the Initiative Petitions for both Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER and CITIZENS IN CHARGE in Florida, but will not submit to the challenged Compensation Ban and the challenged Registration, Data Collection and Identification requirements imposed by the Challenged Statutes.

32.    Plaintiff POOL has circulated candidate and initiative petitions in multiple states over the past seven years.  He has circulated petitions for ballot

12

access on behalf of candidates, new political parties, and initiatives and referenda including but not limited to the following: Ron Paul in Pennsylvania for the 2012 Primary Election; Gary Johnson in Pennsylvania for the 2012 General Election; Gary Johnson and Jill Stein in Alaska for the 2012 General Election; New Party nomination petitions for "Americans Elect" in Alaska and North Dakota in 2012; New Party nomination petitions for "Americans for Limited Government" in Oregon in 2008; Casino Gaming Referendum petitions in Arkansas in 2012; Medical Marijuana referendum petitions in Arkansas in 2012; Ted Cruz in Pennsylvania, Illinois, Vermont, Indiana and Rhode Island for the 2016 Primary Election; Roque De La Fuente in Pennsylvania, Indiana, Wisconsin, and Connecticut for the 2016 Primary Election; Rand Paul in Indiana, Vermont, Illinois, and Rhode Island for the 2016 Primary Election; Roque De La Fuente in Pennsylvania, Alaska, North Dakota, South Dakota, Alabama, Mississippi, Washington, Minnesota, Michigan, Kentucky, Virginia and Ohio for the 2016 General Election; Jill Stein in Pennsylvania and Virginia for the 2016 General Election; Rick Santorum in Indiana for the 2016 Primary Election; Carly Fiorina in Indiana for the 2016 Primary Election; Ben Carson in Indiana for the 2016 Primary Election; Donald Trump in Indiana for the 2016 Primary Election; and dozens of Texas judicial candidates.

33.    Plaintiff POOL has hired dozens of professional circulators residing in multiple states to circulate election and referendum petitions for candidates and ballot questions Plaintiff Pool supported and/or for which he was hired to secure ballot access.

34.    Plaintiff POOL continues to personally circulate petitions and gather signatures on many petitions because he cares deeply about the issues involved.

35.    Plaintiff POOL has never accepted a petition contract which does not compensate based on anything other than the number of valid signatures collected.

36.    Plaintiff POOL has never been accused and has never committed petition signature fraud.

37.    Defendant LAUREL LEE, is the Florida Secretary of State and is made a Defendant solely in her official capacity. Defendant LAUREL LEE is vested with authority to enforce all statutory provisions challenged in this action, through the promulgation of forms, accepting or rejecting the filing of initiative petitions proposing amendment of the Florida state constitution, the validation of signatures and reporting alleged violations to Defendant ASHLEY MOODY, the Florida Attorney General.  At all relevant times, Defendant LAUREL LEE is a state actor within the meaning of 42 U.S.C. § 1983.  Defendant LAUREL LEE maintains her principal office within this jurisdiction at 500 South Bronough Street, Tallahassee, Florida 32399.

38.    Defendant ASHLEY MOODY, is the Florida Attorney General and is made a Defendant solely in her official capacity.  Defendant ASHLEY MOODY is vested with authority to criminally prosecute violations of all statutory provisions challenged in this action.  At all relevant times, Defendant ASHLEY MOODY is a state actor within the meaning of 42 U.S.C. § 1983.  Defendant ASHLEY MOODY maintains her principal office within this jurisdiction at Collins Building, First Floor, 107 West Gaines Street, Tallahassee, Florida 32399.

## IV – FACTUAL ALLEGATIONS

A.    The Challenged Statutes

39.    The Compensation Ban imposed by FLA. STAT. Title IX §104.186 (2021) prohibits, on pain of criminal penalty, Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER, JOHN LOUDEN and CITIZENS IN CHARGE from compensating circulators collecting signatures for Plaintiff's proposed Initiative Petition based on the number of valid signatures collected.

40.    The Compensation Ban is only imposed on paid circulators of Initiative Petitions.  The Compensation Ban is not imposed on volunteer circulators of Initiative Petitions or any circulator (paid or unpaid) of any other petition which must be filed with Defendant Secretary of State to secure ballot access.

41.    Most notably, the Compensation Ban is not imposed on circulators of candidate petitions – petitions state legislators need to have circulated to secure

their own access to the ballot and who, obviously, do not want to impose any

restriction which make it more difficult for THEM to secure ballot access for

THEMSELVES.

42.     During the legislative debate on the Compensation Ban, state

legislators admitted they had no evidence that compensation of petition circulators

based on the number of signatures collected facilitated petition fraud.

43.     During legislative debate on the Compensation Ban, state legislators

admitted that the Compensation Ban would make it more difficult to qualify a

proposed Initiative Petition for the ballot.

44.     The Registration Requirement imposed by FLA. STAT. Title IX

§§100.371(3) (2021) requires, subject to criminal penalty, that only paid circulators

of Initiative Petitions must register with Defendant Secretary of State before they

may collect petition signatures in Florida.

45.     The Registration Requirement is only imposed on paid circulators of

Initiative Petitions.  The Registration Requirement is not imposed on volunteer

circulators of Initiative Petitions or any circulator (paid or unpaid) of any other

petition which must be filed with Defendant Secretary of State to secure ballot

access.

46.     The data collection requirement imposed by FLA. STAT. Title IX

§§100.371(4)(b) (2021) requires, subject to criminal penalty, that only paid

circulators of Initiative Petitions must provide certain personal information (hereinafter the "Data Collection Requirement").

47.    Specifically, the Data Collection Requirement requires that (only) paid circulators of Initiative Petitions provide their name, permanent address, temporary address (if applicable) and date of birth to Defendant Secretary of State before they may circulate Initiative Petitions.

48.    The Data Collection Requirement is only imposed on paid circulators of Initiative Petitions.  The Data Collection Requirement is not imposed on volunteer circulators of Initiative Petitions or any circulator (paid or unpaid) of any other petition which must be filed with Defendant Secretary of State to secure ballot access.

49.    The Identification Requirement imposed by FLA. STAT. Title IX §§100.371(6) (2021) requires:

> The division or the supervisor of elections shall make petition forms available to registered petition circulators.  All such forms must contain information identifying the petition circulator to which the forms are provided.  The division shall maintain a database of all registered petition circulators and the petition forms assigned to each.  Each supervisor of elections shall provide to the division information on petition forms assigned to and received from petition circulators.  The information must be provided in a format and at times as required by the division by rule.  The division must update information on petition forms daily and make the information publicly available.

50.    Accordingly, the administrative rules implementing the Identification Requirement requires Defendant Secretary of State to make the names and addresses

of paid circulators of Initiative Petitions public, subjecting such petition circulators to the risk of potential adverse consequences, threats, coercion and/or harassment from political opponents – all in violation of rights secured to Plaintiff under the First and Fourteenth Amendments to the United States Constitution.

51.    The public disclosure of private information of paid circulators of Initiative Petitions is devoid of any state purpose because the rules implementing the Identification Requirement provide for the supervisor of elections to assign a serial number for each paid circulator (which should also be extended to all volunteer circulators, as well) of Initiative Petitions. Further, a number assignment could be easily printed on the petition page that can be used for all necessary identification requirements without the need to require public disclosure of the names and addresses of paid circulators rendering the Identification Requirement unnecessary for any legitimate governmental interest or purpose.

52.    Recently, the Seminole Indian Tribe used the personal information required to be filed under the Registration, Data Collection and Identification Requirements to track to their hotel rooms petition circulators of a proposed Initiative Petition to expand gaming that the Seminole Indian Tribe opposed, for the sole purpose of subjecting them to harassment in an organized effort to dissuade them from continuing to circulate Initiative Petitions to expand gaming in Florida.

B.    Amending the Florida Constitution by Initiative Petition

53.    Constitutional amendments to the Florida state constitution may be proposed by citizens and placed on the state's general election ballot if they collect and timely file valid signatures equal to 8% of the total number of votes cast in the last presidential election.  FLA. STAT. Title IX §100.371(1) (2021); FLA. CONST. art. XI, § 3-4.

54.    Supporters of a proposed Initiative Petition must register with Defendant Secretary of State as a political committee pursuant to FLA. STAT. Title IX § 106.03 (hereinafter the "Sponsor").  *See*, FLA. STAT. Title IX §100.371(2)

55.    A Sponsor may not start to collect signatures to qualify their Initiative Petition for the ballot until the Sponsor first receives the approval of the form and substance of the proposed Initiative Petition from Defendant Secretary of State (hereinafter "Qualify" or "Qualification").  FLA. STAT. Title IX §100.371(2) (2021) and Florida Administrative Code Rule 1S-2.009(2).

56.    To Qualify for the 2024 general election ballot, a Sponsor of an Initiative Petition must collect and timely file 891,589 valid signatures with Defendant Secretary of State by February 1, 2024.

57.    Additionally, in order to receive an initial pre-clearance review from the Florida Supreme Court that the Initiative Petition is proper to qualify for the ballot, in 2019 the Florida legislature increased the number of signatures that a

Sponsor must initially collect to receive Supreme Court review from 90,420

signatures to 222,898 signatures.

58.    In an article dated December 21, 2020, Jim Saunders of the News

Service of Florida reports in the NWF Daily News:

> "Republican lawmakers, who have taken a series of steps to make it more difficult for backers of ballot initiatives, passed a controversial bill this year that included raising the number of signatures needed to spur Supreme Court review.
>
> ….
>
> "An early advisory opinion from this (Supreme) Court indicating that an amendment meets constitutional and statutory requirements is a great benefit to a sponsor in its efforts to raise the funds and otherwise garner public support necessary to achieve ballot position…Conversely, an opinion indicating that an amendment is not valid avoids the risk to the sponsor of spending large sums of money to pass an amendment only to have it declared invalid after passage, and enables the sponsor to correct the defects if it desires to do it again."

Jim Saunders, *It will be a Lot Harder to Put Proposed Constitutional Amendments on the 2022 Ballot*, NFW Daily News, Dec. 21, 2020, at: https://nfwdailynews.com/story/news/2020/12/21/new-Florida-law-requires-more-signatures-ballot-initiatives/3993579001 (Attached hereto as Exhibit #2).

59.    While Plaintiff does not challenge the increased number of signatures

required to secure Supreme Court review, the increase is, nevertheless, part of a

broader effort by the Florida legislature to impose restrictions to make it less likely

that a Sponsor will be able to secure ballot access for their proposed Initiative

Petitions – an effort which includes the unconstitutional restrictions challenged in

this action as the Challenged Statutes.

20

60.     The reporting on the increased signatures required to secure Supreme Court review also explains the reality that Sponsors of Initiative Petitions are sensitive to marshal and budget funds, at every stage, for the purpose of successful efforts to collect the required signatures (hereinafter the "Petition Drive") to secure ballot access for a proposed Initiative Petition.

61.     Accordingly, owing to the recognized great expense to secure ballot access and the realities of fundraising to finance the effort, a Sponsor of an Initiative Petition requires as much certainty as practicable regarding the success of any effort to qualify an Initiative Petition for the ballot before the Sponsor launches a Petition Drive.

C.     Plaintiff FLORIDA RIGHT TO PRAY TOGETHER Initiative Petition

62.     Plaintiff FLORIDA RIGHT TO PRAY TOGETHER seeks to secure ballot access for a proposed Initiative Petition for the 2024 Florida general election ballot to restrict the ability of state officials to limit religious assembly in the State of Florida.

63.     Defendant Secretary of State certified the Qualification of Plaintiff FLORIDA RIGHT TO PRAY TOGETHER as proposed Initiative Petition 21-14 and is permitted to collect signatures to secure ballot access for Initiative 21-14 for the 2024 general election.

64.    As noted above, Plaintiff JOHN LOUDEN is president of Plaintiff FLORIDA RIGHT TO PRAY TOGETHER.

65.    Plaintiff JOHN LOUDEN was also the president of 2020 Amendment #1, the successful citizen voter amendment to the Florida state constitution which qualified for the 2020 general election ballot and approved by the voters under the "old rules" which did not include any of the Challenged Statutes.

66.    2020 Amendment #1 received approval from Defendant Secretary of State before the Challenged Statutes were passed into law on June 7, 2019. Accordingly, the rules governing circulators of Initiative Petition in effect at the time Initiative 20-1 was approved by Defendant Secretary of State governed the circulation of Initiative Petitions for Initiative 20-1.

67.    As a result, (a) circulators of 2020 Amendment #1 were permitted to be compensated based on the number of valid signatures collected, (b) the Sponsor of 2020 Amendment #1 was permitted to reject and not pay for fraudulent signatures, and (c) the Sponsor of 2020 Amendment #1 was able to contract with the best professional petition circulators in the United States who were willing to receive compensation based on the number of valid signatures collected.

68.    No allegations of petition fraud were lodged against the Sponsors of 2020 Amendment #1 by any Florida state or local election official.

69.    Plaintiff FLORIDA RIGHT TO PRAY TOGETHER has been advised by professional petitioning firms Morning in America LLC, and Grassfire LLC, as well as experienced professional petition campaign managers Tim Mooney and Lee Vasche – all of whom have direct recent experience in managing Initiative Petitions in Florida under the Challenged Statutes – that the Challenged Statutes make it financially impracticable for Plaintiff FLORIDA RIGHT TO PRAY TOGETHER to seek ballot access until enforcement of the Challenged Statutes are either repealed by the state legislature or, in the alternative, enforcement thereof enjoined and declared unconstitutional.

70.    Lee Vasche is the President of Grassfire, LLC. (hereinafter "Grassfire").

71.    Lee Vasche and Grassfire have significant experience collecting signatures for and securing ballot access for Initiative Petition in the State of Florida.

72.    Lee Vasche and Grassfire helped to manage and collect signatures in 2018 and 2019 for Floridians for Energy Choices who was the Sponsor of Initiative 18-10.  The validity rate of signatures collected by Lee Vasche and Grassfire for Initiative 18-10 was approximately 70%.

73.    Lee Vasche/Grassfire is also the current manager for about one-third of the petition drive to collect signatures to secure ballot access for the Initiative

Petition to expand gaming in Florida for the 2022 general election ballot titled

"Limited Authorization of Casino Gaming" designated by Defendant Secretary of

State as Initiative 21-16.

74.    Lee Vasche reported to Plaintiff FLORIDA RIGHT TO PRAY

TOGETHER that as a direct and causal result of the Compensation Ban, the

Sponsor of Initiative 21-16 has had to deal with an increased number of fraudulent

signatures on Initiative Petitions and the validity rate of signatures collected has

fallen from the 70% validity rate normally expected from the best professional

petition circulators (who are unwilling to work under the Compensation Ban) to a

validity rate of less than 50% by petition circulators working under the challenged

Compensation Ban.

75.    Lee Vasche reported to Plaintiff FLORIDA RIGHT TO PRAY

TOGETHER that because the best professional petition circulators are refusing to

work under the Compensation Ban, the Sponsor of Initiative 21-16 was forced to

train new petition circulators who have not been as willing or able to engage voters

to secure valid signatures and some have, instead, resorted to the falsification of

signatures in an effort to meet minimum production requirements in order to keep

their jobs and receive a paycheck.

76.    Lee Vasche reported to Plaintiff FLORIDA RIGHT TO PRAY

TOGETHER that in just one week of production the newly trained petition

circulators turned in approximately 4,250 invalid and fraudulent signatures – all of which are required to be filed with the supervisor of elections within 30 days of receipt.

77.     Plaintiff FLORIDA RIGHT TO PRAY TOGETHER intends to hire Morning in America, LLC (hereinafter "Morning in America") to manage the Petition Drive.

78.     Plaintiff FLORIDA RIGHT TO PRAY TOGETHER would like to also hire Plaintiff POOL to assist in the circulation of Initiative 18-10.  Plaintiff POOL has agreed to circulate the petition for Plaintiff FLORIDA RIGHT TO PRAY only if the Compensation Ban and the Registration, Data Collection and Identification requirements are either repealed or their enforcement enjoined by a court of competent jurisdiction.

79.     Morning in America is a national petition and campaign management firm.

80.     Tim Mooney is president of Morning in America.

81.     Tim Mooney has worked with some of America's most recognizable elected officials, including the Donald J. Trump campaign in both the primaries and general election, large corporations and powerful trade associations, including as a political director for the National Federation of Independent Business (NFIB).

82.    Morning in America has an enviable track record on ballot measures –
41 wins in 47 efforts – efforts which include work on issues as varied as taxes,
term limits, tort reform, secret ballot rights, education reforms as well as the recall
of elected officials.  Tim Mooney has worked on campaigns that have successfully
amended state constitutions 18 times in 11 different states, and on campaigns and
independent expenditures that have led to the election of over 80 members of
Congress.

83.    A key component in the success of Morning in America's record has
been its ability to recruit and contract for the services of a highly trained cadre of
professional petition circulators who have acquired the experience to be able to
quickly determine if a voter is qualified to sign a petition and the ability to collect
large numbers of valid signatures from qualified voters in as short a time as
possible.

84.    The professional petition circulators contracted by Morning in
America, on average, experience a signature validation rate of over 65%.  A rate
dependent, in part, on the complexity of signature validation requirement factors
which fluctuate from one jurisdiction to the next.

85.    Tim Mooney reported to Plaintiffs FLORIDA RIGHT TO PRAY
TOGETHER and CITIZENS IN CHARGE that, typically, the best professional

petition circulators attain a validity rate of about 65% to 70% of signatures collected with few fraudulent signatures.

86.    Most of the professional petition circulators contracted by Morning in America refuse to accept compensation on any basis other than the number of valid signatures collected.

87.    The best professional petition circulators are able to quickly identify potential valid signers of the petition, engage them in concise communication to accurately convey the purpose of the proposed initiative or referendum and make sure the signer properly executes the petition quicker than less skilled volunteer or inexperienced petition circulators.

88.    The best professional petition circulators are so adept at qualifying voters and collecting valid signatures at higher volumes that they refuse to work under any compensation scheme which prohibits compensation based on the number of valid signatures collected.  The best professional petition circulators forego circulating petitions in the few jurisdictions (such as Florida since 2019) which seek to restrict compensation based on the number of valid signatures collected so that they can accept work in jurisdictions free from such compensation restrictions because they can earn significantly more income in the restriction-free jurisdictions.

89.     The professional petition circulators contracted by Morning in America also avoid jurisdictions which impose registration requirements as well as the requirement to file personal information with state officials which may permit political opponents to subject them to harassment.

90.     Morning in America has worked petition drives in other states that impose similar restrictions on compensation as those challenged in this action and have experienced a signature validity rate in those jurisdictions of under 50%, along with petition circulators turning in fraudulent signatures and also fraud by petitioners reporting, and seeking compensation for more hours worked than they actually worked.

91.     As a result of Morning in America's past experience in managing petition drives under similar restrictions as those challenged in this action, Morning in America has reported to Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER and CITIZENS IN CHARGE that it will not agree to assist any new clients in Florida so long as the requirements of the Challenged Statutes remain in place.

92.     The ability of Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER and CITIZENS IN CHARGE to contract with Morning in America depends on securing a preliminary and, thereafter, a permanent injunction against enforcement

of the Compensation Ban, and the Registration, Data Collection and Identification Requirements.

93.    Grassfire was contracted to assist in the management of part of the recently completed petition drive to qualify Initiative Petition 21-16 for the Florida ballot.

94.    As a direct and proximate result of the challenged Compensation Ban, Registration, Data Collection and Identification Requirement, Grassfire was forced to hire, train and ultimately fire several thousand ineffective, inexperienced petition circulators because the best professional petition circulators, both residents and non-residents of the state of Florida, refused to submit to the challenged Compensation Ban, and Registration, Data Collection and Identification Requirements for paid circulators of Initiative Petitions.

95.    The vast majority of the new petition circulators that Grassfire was forced to hire and train for Initiative Petition 21-16 were economically unmotivated to work hard to collect valid signatures as quickly as possible because they knew that they would be paid without regard to the number of signatures they collected as a direct and proximate result of the Compensation Ban.

96.    Grassfire also discovered that petition circulators operating under the Compensation Ban, in an effort not to get fired, would engage in actual signature fraud so that they would show just enough "production" not to get terminated as

29

the Compensation Ban prevents proponents from basing compensation based on the number of valid signatures collected.

97.    Grassfire also discovered and reported to Plaintiff FLORIDA RIGHT TO PRAY TOGETHER that Initiative Petition 21-16 tallied a validity rate of well under 50% by the new circulators operating under the Compensation Ban because circulator compensation can no longer be tied to the collection of valid signatures and the new circulators had no motivation to make sure voters were properly executing their Initiative Petition form.

98.    As a direct and proximate result of the Compensation Ban, Grassfire reported to Plaintiff FLORIDA RIGHT TO PRAY TOGETHER that Initiative Petition 21-16 took longer than expected, produced fewer valid signatures, and cost more than anticipated because of the increased costs associated with managing a circulator work-force economically unmotivated to collect valid petition signatures at an economical rate of production.

99.    Tim Mooney of Morning in America has advised Plaintiff FLORIDA RIGHT TO PRAY TOGETHER that using petition circulators who are able to be compensated based on the number of valid signatures collected is the only viable path to secure ballot access for their proposed Initiative Petition.

100.    Tim Mooney has also advised Plaintiff FLORIDA RIGHT TO PRAY TOGETHER not to expend any economic resources to launch the Petition Drive

for their Initiative Petition until the legal status of the Challenged Statutes is
resolved.

101.   Accordingly, upon experienced advice, Plaintiff FLORIDA RIGHT
TO PRAY TOGETHER requires the relief requested in this action to be able to
justify to donors the probity of launching the Petition Drive to collect the 891,589
valid signatures required to secure ballot access for Initiative 21-14 for the 2024
general election ballot.

D.    Plaintiff CITIZENS IN CHARGE's Proposed Initiative Petition

102.   Plaintiff CITIZENS IN CHARGE intends to Qualify a proposed
Initiative Petition to establish a legislative referendum/initiative process in the
State of Florida.

103.   Currently, the sole option in the State of Florida for citizens to wrest
control over state policy away from unresponsive state legislators is through the
constitutional amendment process – a process which clutters the Florida
constitution with material more properly reserved to legislative enactments.

104.   Based on the experience of Plaintiff CITIZENS IN CHARGE's
president, Paul Jacob, there are a certain number of voters who will voice support
for an issue but will nevertheless refuse to sign a petition to amend the state's
constitution because they do not believe that certain more mundane issues should
be enshrined in the text of the state's constitution.

105.   Accordingly, Plaintiff CITIZENS IN CHARGE is supporting and intends to Qualify and Sponsor a proposed Initiative Petition to establish a legislative referendum/initiative process in the State of Florida.

106.   Plaintiff CITIZENS IN CHARGE would like to secure access for Plaintiff's proposed Initiative Petition for the 2024 general election ballot.

107.   Plaintiff CITIZENS IN CHARGE intends to hire Morning in America to manage the Petition Drive to secure access for Plaintiff's proposed Initiative Petition.

108.   Plaintiff CITIZENS IN CHARGE would also like to contract for the services of Plaintiff POOL and his petition firm ACCELEVATE2020 to assist in collecting signatures for Plaintiff's proposed Initiative Petition.

109.   Plaintiff POOL and his firm have agreed to assist Plaintiff CITIZENS IN CHARGE to collect signatures for the proposed Initiative Petition on the condition that the Compensation Ban and Registration, Data Collection and Identification requirements are either repealed by the state legislature or enjoined by a court of competent jurisdiction.

110.   Plaintiff POOL has explained that he refuses to work for less compensation than can be achieved in other jurisdictions and refuses to submit to ballot access rules which may subject him and his firm's circulators to criminal liability and/or hostile attacks or harassment from political opponents.

E.    <u>Other Specific Allegations</u>

111.   The challenged Compensation Ban and Registration, Data Collection and Identification Requirements increase costs through the inefficiencies associated with not being able to contract for the services of the best professional petition circulators in the United States, and make it impossible and/or significantly impair Plaintiffs' ability to effectively plan and fund a successful Petition Drive.

112.   The additional costs associated with not being able to contract for the services of the best professional petition circulators in the United States threatens to limit the size, scope and number of voters that Plaintiffs will be able to communicate with during the planned Petition Drive.

113.   As a direct and proximate result of the unwillingness of the best professional petition circulators to work under the requirements of the Compensation Ban, and the Registration, Data Collection and Identification Requirements, the Challenged Statutes drastically reduce both the size and quality of the pool of petition circulators available to Plaintiffs for their planned Petition Drive.

114.   The challenged Compensation Ban reduces both the size and quality of the pool of available petition circulators thereby limiting the size of the audience Plaintiffs can reach during the planned Petition Drive.

115.   The challenged Compensation Ban will increase both the cost and length of Plaintiffs' planned Petition Drive.

116.   The challenged Compensation Ban will reduce the number of signatures Plaintiffs can collect during the Petition Drive.

117.   The challenged Compensation Ban increases the cost of managing petition circulators during Plaintiffs' planned Petition Drive.

118.   The challenged Compensation Ban makes it less likely that Plaintiffs will be able to collect the required number of valid signatures necessary to secure ballot access for Plaintiffs' proposed Initiative Petition.

119.   The Compensation Ban is not narrowly tailored to protect Florida's legitimate interest in preventing petition fraud because it prevents compensation based on the number of valid signatures collected.

120.   The Compensation Ban is broader than necessary to protect the state's interest in policing petition fraud.

121.   The Compensation Ban prevents Sponsors from refusing to compensate circulators of Initiative Petitions for fraudulent and/or invalid signatures.

122.   At minimum, a more narrowly drawn statute designed to advance the state's interest in policing against petition fraud would permit Sponsors to compensate circulators of Initiative Petitions based on the number valid petition

signatures collected, because all valid petition signatures are free from any patina of fraud.

123.    The Registration, Data Collection and Identification Requirements are not narrowly tailored to advance a compelling governmental interest because Florida requires paid circulators of Initiative Petitions to provide their name and address on the petition page collected from the voter in the form of a "Petition Circulator's Affidavit" required under FLA. STAT. Title IX §100.371(5) (2021) and Florida Administrative Code Rule 1S-2.0091(3)(b)(6).

124.    The Data Collection Requirement to provide the paid circulator's temporary address (i.e., local hotel address while collecting signatures in Florida) and the circulator's date of birth is not tethered to any legitimate state interest.

125.    The Identification Requirement serves no legitimate interest as Defendant Secretary of State is able to track Initiative Petition forms with numerical identification which does not require the public disclosure of a circulator's name and address while the Initiative Petition is circulated to voters in violation of the Supreme Court's decision in *Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182 (1999).

126.    The challenged Penalty imposes upon Plaintiffs an unknown economic liability which limits Plaintiffs' ability to budget for the Petition Drive because Plaintiffs have no control over circulators who may refuse to turn in

Initiative Petition forms – especially those terminated for poor performance – thereby triggering the provision of the Penalty against Plaintiffs.

127.   Accordingly, the Penalty imposes a disincentive to Plaintiffs from exercising Plaintiffs' established constitutional right to compensate Initiative Petition circulators, rather than rely on volunteer circulators whose failure to file petition forms within 30 days of receipt are not taxed to the Sponsor/Plaintiffs.

128.   Plaintiffs have no other adequate remedy available at law.

## V – CAUSES OF ACTION

### COUNT I
(FLA. STAT. Title IX §104.186 (2021) – As-Applied Violation of First and Fourteenth Amendments to the United States Constitution)

129.   Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

130.   FLA. STAT. Title IX §104.186 (2021) (the "Compensation Ban") makes it unlawful, subject to criminal penalty, to pay initiative petition circulators to place a proposed amendment to the Florida constitution on the ballot based on the number of signatures collected by the petition circulator.

131.   The Compensation Ban is only applied in Florida as applied to the collection initiative petition signatures to place a proposed amendment to the Florida constitution on the ballot.

132.   The Compensation Ban imposes a severe burden on core political speech because: (a) it reduces the pool of available petition circulators to carry Plaintiffs' message to the voters of Florida; (b) it reduces the total quantum of speech available in the arena of signature collection efforts to secure ballot access for proposed amendments to the Florida state constitution; (c) it reduces the total number of Florida voters Plaintiffs can reach during its petition drive to amend the Florida state constitution; (d) it increases the cost of collecting the number of valid signatures necessary to secure ballot access for proposed state constitutional amendments; (e) it increases the inefficiencies in collecting the number of valid signatures necessary to secure ballot access for proposed state constitutional amendments; (f) it increases the length of time required to collect the number of valid signatures necessary to secure ballot access for proposed state constitutional amendments; (g) it reduces the likelihood that Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER, JOHN LOUDEN and CITIZENS IN CHARGE will succeed in collecting the number of valid signatures necessary to secure ballot access for Plaintiffs' proposed state constitutional amendments, thereby threatening to further limit the total quantum of political speech resulting in the election campaign to pass Plaintiff's proposed state constitutional amendment.

133.   The Compensation Ban impairs Plaintiff Pool's fundamental right to full compensation for exercising rights guaranteed under the First and Fourteenth

Amendments to the United States Constitution as set forth in the Supreme Court's decision in *Meyer v. Grant*, 486 U.S. 414 (1988).

134. The Compensation ban is not narrowly tailored to advance a compelling governmental interest.

135. The Compensation Ban fails to advance any important regulatory interest.

136. In passing the Compensation Ban, state legislators admitted that it would make it more difficult to secure ballot access for proposed state constitutional amendments.

137. In passing the Compensation Ban, state legislators admitted that there was no evidence that it would reduce fraud in the collection of signatures to place proposed state constitutional amendments on the state ballot.

138. The United States Supreme Court has clearly established the right to compensate petition canvassers to collect signatures on initiative and referendum petitions.

139. Accordingly, the Compensation Ban of FLA. STAT. Title IX §104.186 (2021) violates rights guaranteed to Plaintiffs, and all those similarly situated, under the First and Fourteenth Amendments to the United States Constitution for which Plaintiffs demand the requested relief.

COUNT II
(FLA. STAT. Title IX §104.186 (2021) – Violation of Equal Protection Clause of
the Fourteenth Amendment to the United States Constitution)

140.   Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

141.   FLA. STAT. Title IX §104.186 (2021) (the "Compensation Ban") makes it unlawful, subject to criminal penalty to pay only initiative petition circulators to place a proposed amendment to the Florida constitution on the ballot based on the number of signatures collected by the petition circulator.

142.   The Compensation Ban is not imposed on the collection of any other signature for any other form of official petition that must be filed with Defendant Secretary of State to secure access to the Florida ballot.

143.   The circulation of initiative and referendum petitions to amend a state constitution is recognized by the United States Supreme Court as core political speech afforded the highest protection under the First and Fourteenth Amendments to the United States Constitution.

144.   As a result, the Compensation Ban intrudes upon fundamental constitutional rights which cannot be targeted for unequal treatment under the laws of the State of Florida under the Fourteenth Amendment to the United States Constitution.

145.    Accordingly, the Compensation Ban of FLA. STAT. Title IX §104.186 (2021) violates rights guaranteed to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiffs demand the requested relief.

## COUNT III
(FLA. STAT. Title IX §§100.371(3) (2021) – Violation of Equal Protection Clause of the Fourteenth Amendment to the United States Constitution)

146.    Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

147.    The registration requirement imposed by FLA. STAT. Title IX §§100.371(3) (2021) (the "Registration Requirement") requires that only circulators of initiative petitions to place proposed amendments to the Florida state constitution must registered with Defendant Secretary of State before circulating petitions to collect signatures from the voters of Florida.

148.    The Registration Requirement is not imposed on circulators for any other official petition that must be filed with Defendant Secretary of State to secure access to the Florida ballot.

149.    The circulation of initiative and referendum petitions to amend a state constitution is recognized by the United States Supreme Court as core political speech afforded the highest protection under the First and Fourteenth Amendments to the United States Constitution.

150.   As a result, the Registration Requirement intrudes upon fundamental constitutional rights which cannot be targeted for unequal enforcement by Defendants under the requirements of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

151.   Accordingly, the Registration Requirement of FLA. STAT. Title IX §§100.371(3) (2021) violates rights guaranteed to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiffs demand the requested relief.

COUNT IV
(FLA. STAT. Title IX §§100.371(4)(b) (2021) – As-Applied Violation of First and Fourteenth Amendments to the United States Constitution)

152.   Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

153.   FLA. STAT. Title IX §§100.371(4)(b) (2021) (the "Data Collection Requirement") requires, subject to criminal penalty, circulators of initiative petitions for proposed state constitutional amendments to submit to Defendant Secretary of State, before they may lawfully circulate an initiative petition, certain private personal information made available to the public at all times while the circulator is engaged in the collection of initiative petition signatures for proposed constitutional amendments in Florida.

154.   Specifically, the Data Collection Requirement requires circulators of Initiative Petitions to provide Defendant Secretary of State with their name, permanent address, temporary address (if applicable) and date of birth.

155.   The United States Supreme Court in *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 201-05 (1999), held a nearly identical data collection requirement for initiative petition circulators to be a severe impairment of rights guaranteed under the First and Fourteenth Amendments to the United States Constitution where such information can be used by political opponents to harass and threaten initiative petition circulators from exercising their right to engage in core political speech.

156.   The challenged Data Collection Requirement has already been used by the Seminole Tribe in Florida to locate the temporary Florida address of initiative petition circulators circulating a proposed gaming amendment to the Florida state constitution that the Seminole Tribe opposes to permit them to lay-in-wait outside the hotel rooms of supporting circulators to try to harass them from continuing their circulation effort for the amendment the Seminole Tribe opposes.

157.   The misuse of information required to be filed under Data Collection Requirement by the Seminole Tribe demonstrates the severe impairment to rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United

States Constitution caused by the public availability of the information required to be filed under the Data Collection Requirement.

158.   The Data Collection Requirement imposes a severe burden on Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER, JOHN LOUDEN and CITIZENS IN CHARGE's ability to engage in core political speech protected under the First and Fourteenth Amendments because it reduces the pool of available circulators willing to divulge the personal information to the Secretary of State for fear of being subjected to harassment by political opponents, such as the circulators of the proposed gaming amendment targeted by the Seminole Tribe in Florida.

159.   The Data Collection Requirement impairs the right of Plaintiff POOL to engage in anonymous speech under the First and Fourteenth Amendments free from an unnecessary increased risk of exposure to harassment and /or violence by political opponents.

160.   The Data Collection Requirement is not narrowly tailored to advance a compelling governmental or important regulatory interest.

161.   Accordingly, the Data Collection Requirement of FLA. STAT. Title IX §§100.371(4)(b) (2021) violates rights guaranteed to Plaintiffs, and all those similarly situated, under the First and Fourteenth Amendments to the United States Constitution for which Plaintiffs demand the requested relief.

COUNT V

(FLA. STAT. Title IX §§100.371(4)(b) (2021) – Violation of Equal Protection
Clause of the Fourteenth Amendment to the United States Constitution)

162.   Plaintiffs repeat and re-allege all previous paragraphs as if fully set
forth herein.

163.   FLA. STAT. Title IX §§100.371(4)(b) (2021) (the "Data Collection
Requirement") requires, subject to criminal penalty, circulators of only initiative
petitions for proposed state constitutional amendments to submit to Defendant
Secretary of State, before they may lawfully circulate an initiative petition, certain
private personal information made available to the public at all times while the
circulator is engaged in the collection of initiative petition signatures for proposed
constitutional amendments in Florida.

164.   Specifically, the Data Collection Requirement requires only
circulators of Initiative Petitions to provide Defendant Secretary of State their
name, permanent address, temporary address (if applicable) and date of birth to
Defendant Secretary of State.

165.   The Data Collection Requirement is not imposed on circulators for
any other official petition that must be filed with Defendant Secretary of State to
secure access to the Florida ballot.

166.   The circulation of initiative and referendum petitions to amend a state
constitution is recognized by the United States Supreme Court as core political

44

speech afforded the highest protection under the First and Fourteenth Amendments to the United States Constitution.

167. As a result, the Data Collection Requirement intrudes upon fundamental constitutional rights which cannot be targeted for unequal enforcement by Defendants under the requirements of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

168. Accordingly, the Data Collection Requirement of FLA. STAT. Title IX §§100.371(4)(b) (2021) violates rights guaranteed to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiffs demand the requested relief.

COUNT VI

(FLA. STAT. Title IX §§100.371(6) (2021) and Florida Administrative Code Rule 1S-2.009(6)(a)(3) – As-Applied Violation of First and Fourteenth Amendments to the United States Constitution)

169. Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

170. FLA. STAT. Title IX §§100.371(6) (2021) and Florida Administrative Code Rule 1S-2.009(6)(a)(3) (the "Identification Requirement") require Defendant Secretary of State to print the name and address of paid circulators of Initiative Petitions on the front, lower right corner, of each petition page, in full view of any voter (hereinafter the "Identification Requirement") (*see* Exhibit #1, attached to this Complaint), in violation of rights clearly established under the First and

Fourteenth Amendments to the United States Constitution under the United States

Supreme Court precedent in *Buckley v. American Constitutional Law Found., Inc.*,

525 U.S. 182 (1999).

171.   The United States Supreme Court in *Buckley v. American*

*Constitutional Law Foundation*, 525 U.S. 182, 201-05 (1999), held a nearly

identical Identification Requirement for initiative petition circulators a severe

impairment of rights guaranteed under the First and Fourteenth Amendments to the

United States Constitution where such information can be used by political

opponents to harass and threaten initiative petition circulators from exercising their

right to engage in core political speech.

172.   The challenged Identification Requirement has already been used by

the Seminole Tribe in Florida to locate the temporary Florida address of circulators

circulating an Initiative Petition seeking to expand gaming in Florida that the

Seminole Tribe opposes.   The challenged Identification Requirement permitted

them to lay-in-wait outside the hotel rooms of supporting circulators to try to

harass them from continuing their circulation effort for the amendment the

Seminole Tribe opposes.

173.   The misuse of information made public by the Identification

Requirement by the Seminole Tribe demonstrates the severe impairment to rights

guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United

States Constitution caused by the public availability of the information required to be printed on Initiative Petitions under the Identification Requirement.

174.   The Identification Requirement also imposes a severe burden on Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER, JOHN LOUDEN and CITIZENS IN CHARGE's ability to engage in core political speech protected under the First and Fourteenth Amendments because it reduces the pool of available circulators, such as Plaintiff POOL, unwilling to have personal information printed on Initiative Petitions forms for fear of being subjected to harassment by political opponents, such as the circulators of the proposed gaming amendment targeted by the Seminole Tribe in Florida.

175.   The Identification Requirement is not narrowly tailored to advance any compelling governmental of important regulatory interest because circulators can, instead, be tracked through anonymous numeric identification and through post-circulation execution of Petition Circulator Affidavits.

176.   Accordingly, the Identification Requirement of FLA. STAT. Title IX §§100.371(6) (2021) and Florida Administrative Code Rule 1S-2.009(6)(a)(3) violates rights guaranteed to Plaintiffs, and all those similarly situated, under the First and Fourteenth Amendments to the United States Constitution for which Plaintiffs demand the requested relief.

COUNT VII

(FLA. STAT. Title IX §§100.371(6) (2021) and Florida Administrative Code Rule
1S-2.009(6)(a)(3) – Violation of Equal Protection Clause of the Fourteenth
Amendment to the United States Constitution)

177.   Plaintiffs repeat and re-allege all previous paragraphs as if fully set
forth herein.

178.   FLA. STAT. Title IX §§100.371(6) (2021) and Florida Administrative
Code Rule 1S-2.009(6)(a)(3) (the "Identification Requirement") require Defendant
Secretary of State to print the name and address of paid circulators of Initiative
Petitions on the front, lower right corner, of each petition page, in full view of any
voter (hereinafter the "Identification Requirement") (*see* Exhibit #1, attached to
this Complaint), in violation of rights clearly established under the First and
Fourteenth Amendments to the United States Constitution under the United States
Supreme Court precedent in *Buckley v. American Constitutional Law Found., Inc.*,
525 U.S. 182 (1999).

179.   Specifically, the Identification Requirement is imposed against only
paid circulators of Initiative Petitions.

180.   The Identification Requirement is not imposed on volunteer
circulators of Initiative Petitions or any circulators (paid or unpaid) of any other
official petition that must be filed with Defendant Secretary of State to secure
access to the Florida ballot.

181.    The circulation of initiative and referendum petitions to amend a state constitution is recognized by the United States Supreme Court as core political speech afforded the highest protection under the First and Fourteenth Amendments to the United States Constitution.

182.    As a result, the Identification Requirement intrudes upon fundamental constitutional rights which cannot be targeted for unequal enforcement by Defendants under the requirements of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

183.    Accordingly, the Identification Requirement of FLA. STAT. Title IX §§100.371(6) (2021) and Florida Administrative Code Rule 1S-2.009(6)(a)(3) violates rights guaranteed to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiffs demand the requested relief.

## COUNT VIII
(Florida Administrative Code Rule 1S-2.0091(2)(b) – As-Applied Violation of First and Fourteenth Amendments to the United States Constitution)

184.    Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

185.    Florida Administrative Code Rule 1S-2.0091(2)(b) (the "Penalty") imposes on Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER and CITIZENS IN CHARGE, as Sponsors of Initiative Petitions, financial liability for the fines

imposed under FLA. STAT. Title IX §100.371(7)(a)(1) & (2) (2021) if paid circulators, and only paid circulators, of an Initiative Petition fail to timely submit a petition form within 30 days after the voter signs the form (hereinafter the "Penalty").

186.    Accordingly, the Penalty imposes a significant economic liability and "tax" on the exercise of the fundamental constitutional right to hire paid petition circulators to engage in core political speech under the First and Fourteenth Amendments to the United States Constitution as established by the United States Supreme Court in *Meyer v. Grant*, 486 U.S. 414 (1988).

187.    Accordingly, the Penalty imposed under Florida Administrative Code Rule 1S-2.0091(2)(b) severely impairs rights guaranteed to Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER and CITIZENS IN CHARGE under the First and Fourteenth Amendments to the United States Constitution for which Plaintiffs demand the requested relief.

## COUNT IX
(Florida Administrative Code Rule 1S-2.0091(2)(b) – Violation of Equal
Protection Clause of the Fourteenth Amendment to the United States Constitution)

188.    Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

189.    Florida Administrative Code Rule 1S-2.0091(2)(b) (the "Penalty") imposes on Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER and CITIZENS

IN CHARGE, as Sponsors of Initiative Petitions, financial liability for the fines imposed under FLA. STAT. Title IX §100.371(7)(a)(1) & (2) (2021) if paid circulators, and only paid circulators, of an Initiative Petition fail to timely submit a petition form within 30 days after the voter signs the form (hereinafter the "Penalty").

190.    Specifically, the Penalty is imposed against only paid circulators of Initiative Petitions.

191.    The Penalty is not imposed on volunteer circulators of Initiative Petitions or any circulators (paid or unpaid) of any other official petition that must be filed with Defendant Secretary of State to secure access to the Florida ballot.

192.    The circulation of initiative and referendum petitions to amend a state constitution is recognized by the United States Supreme Court as core political speech afforded the highest protection under the First and Fourteenth Amendments to the United States Constitution.

193.    As a result, the Penalty intrudes upon fundamental constitutional rights which cannot be targeted for unequal enforcement by Defendants under the requirements of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

194.    Accordingly, the Penalty imposed under Florida Administrative Code Rule 1S-2.0091(2)(b) violates rights guaranteed to Plaintiffs FLORIDA RIGHT

TO PRAY TOGETHER and CITIZENS IN CHARGE under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiffs demand the requested relief.

## COUNT X
(All Challenged Statutes Acting in Tandem – As-Applied Violation of First and Fourteenth Amendments to the United States Constitution)

195.   Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

196.   All Challenged Statutes, working in tandem, constitute a broad-based attack on rights guaranteed to all Plaintiffs under the First and Fourteenth Amendments to the United States Constitution to contract for the services of paid circulators to collect signatures for their proposed Initiative Petition as established by the United States Supreme Court decision in *Meyer v. Grant*, 486 U.S. 414 (1988).

197.   The combined impact of all of the Challenged Statutes working together and in tandem severely impairs the established right of all Plaintiffs under the First and Fourteenth Amendments to the United States Constitution to contract for the services of paid circulators to collect signatures for their proposed Initiative Petition as established by the United States Supreme Court decision in *Meyer v. Grant*, 486 U.S. 414 (1988).

198.    The combined impact of all of the Challenged Statutes working together and in tandem is to: (a) reduce the pool of available petition circulators to carry Plaintiffs' message to the voters of Florida; (b) reduce the total quantum of speech available in the arena of signature collection efforts to secure ballot access for proposed Initiative Petitions; (c) reduce the total number of Florida voters Plaintiffs can reach during Petition Drives for Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER, JOHN LOUDEN and CITIZENS IN CHARGE's proposed Initiative Petitions; (d) increase the cost of Plaintiffs' Petition Drives; (e) increase the inefficiencies in Plaintiffs' planned Petition Drives for the proposed Initiative Petitions; (f) increase the length of time required for Plaintiffs to successfully complete their planned Petition Drives; and (g) reduce the likelihood that Plaintiffs FLORIDA RIGHT TO PRAY TOGETHER, JOHN LOUDEN and CITIZENS IN CHARGE will secure ballot access for their planned Initiative Petition Drives.

199.    The Challenged Statutes are not narrowly tailored to advance a compelling governmental interest.

200.    Accordingly, the Challenged Statutes, working together and in tandem, severely impair rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution for which Plaintiffs demand the requested relief.

## VI – REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court:

a. Enter preliminary injunctive relief enjoining Defendants from enforcing the challenged Compensation Ban against Plaintiffs, and all others similarly situated;

b. Enter preliminary injunctive relief enjoining Defendants from enforcing the challenged Registration Requirement against Plaintiffs, and all others similarly situated;

c. Enter preliminary injunctive relief enjoining Defendants from enforcing the Data Collection Requirement against Plaintiffs, and all others similarly situated;

d. Enter preliminary injunctive relief enjoining Defendants from enforcing the Identification Requirement against Plaintiffs, and all others similarly situated;

e. Enter preliminary injunctive relief enjoining Defendants from enforcing the Penalty against Plaintiffs, and all others similarly situated;

f. Enter preliminary injunctive relief enjoining Defendants from enforcing any of the Challenged Statutes against Plaintiffs, and all others similarly situated;

g.      Declare the Compensation Ban unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

h.      Declare the Compensation Ban unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

i.      Declare the Registration Requirement unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

j.      Declare the Data Collection Requirement unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

k.      Declare the Data Collection Requirement unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

l.      Declare the Identification Requirement unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

m.      Declare the Identification Requirement unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

n.      Declare the Penalty unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

o.      Declare the Penalty unconstitutional under the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution;

p.      Declare all of the Challenged Statutes working in tandem

unconstitutional under the First and Fourteenth Amendment to the United States

Constitution;

q.      Permanently enjoin Defendants from enforcing the challenged

Compensation Ban against Plaintiffs, and all others similarly situated, now and in

the future;

r.      Permanently enjoin Defendants from enforcing the challenged

Registration Requirement against Plaintiffs, and all others similarly situated, now

and in the future;

s.      Permanently enjoin Defendants from enforcing the challenged Data

Collection Requirement against Plaintiffs, and all others similarly situated, now

and in the future;

t.      Permanently enjoin Defendants from enforcing the challenged

Identification Requirement against Plaintiffs, and all others similarly situated, now

and in the future;

u.      Permanently enjoin Defendants from enforcing the challenged Penalty

against Plaintiffs, and all others similarly situated, now and in the future;

56

v.      Permanently enjoin Defendants from enforcing any of the Challenged

Statutes against Plaintiffs, and all others similarly situated, now and in the future;

w.      Award Plaintiffs the costs of this action together with their reasonable

attorneys' fees and expenses pursuant to 42 U.S.C. §1988; and,

x.      Retain jurisdiction of this action and grant Plaintiffs such other relief

which may, in the determination of this Honorable Court, be necessary and proper.

Respectfully submitted,

Dated: January 21, 2022          By:    */s/ Joel L. Frank*
                                         Joel L. Frank, Esquire
                                         Florida Attorney I.D. 912816
                                         Lamb McErlane, P.C.
                                         24 East Market Street
                                         Post Office Box 565
                                         West Chester, PA  19381-0565

                                         */s/ Paul Rossi*
                                         Paul Rossi, Esquire
                                         Pennsylvania Attorney I.D. 84947
                                         316 Hill Street, Ste 1020
                                         Mountville, PA 17554
                                         *(Pro Hac Vice Admission Pending)*

# ATTACHMENT "A"

**Florida Administrative Code & Administrative Register**

- **Rule 1s-2.009**
- **Rule 1s-2.0091**
    **(Rules Implementing Compensation Ban, and Registration, Data Collection & Identification Requirements)**

**1S-2.009 Constitutional Amendment by Initiative Petition; Form Approval; Circulation.**

(1) Forms. All forms referenced herein are incorporated by reference and are available online on the Division of Elections' website at https://www.dos.myflorida.com/elections under the header for forms, through the rule as adopted under www.flrules.org, or from the Florida Department of State, Division of Elections, Room 316, R.A. Gray Building, 500 S. Bronough Street, Tallahassee, 32399-0250, (850)245-6200.

(2) Initiative Petition Approval Process.

(a) Submission. Before a petition to place a proposed amendment to the Florida State Constitution on the ballot by initiative can be circulated for signatures, the sponsoring political committee must receive approval of the initiative petition from the Secretary of State. The sponsoring committee shall email a written request that includes the proposed language to DivElections@DOS.MyFlorida.com.

(b) Requirements.

1. The Secretary of State shall review the initiative petition form solely for sufficiency of the format and shall render a decision within seven (7) days following receipt.

2. The proposed language submitted by the sponsoring political committee shall consist of the following:

a. The ballot title, which shall not exceed 15 words.

b. The ballot summary, which shall not exceed 75 words.

c. The article and section being created or amended in the Florida State Constitition. For each existing article and/or section being amended, the languange shall be in the format "Amends Article [insert number], Section [insert number]." The article and section number provided must correspond to an existing section of the Constitution and must correspond with the full text of the proposed amendment. For each article and/or section being created, the language shall be in the format, "Creates Article [insert], New Section".

d. The full text of the amendment being proposed. If the proposed constitutional amendment amends an existing section or sections, the full text shall include the entire existing text of the section or sections being amended. Text that is being inserted into the Constitution shall be notated with an underline, and text that is being deleted shall be notated with a strike through.

3. Word Count. The following provisions apply to determine the word count for a ballot title and summary:

a. Hyphenated compound words count as two or more words.

b. A plus or minus sign shall count as one word.

c. Punctuation such as commas, periods, hyphens, question marks, parentheses, quotation marks or exclamation points, does not affect the word count.

d. Each word joined by a forward or back slash to another word counts separately as a word.

e. Each part of a date counts as one word. Example: January 1, 2025 shall count as three words.

f. Each word in a name is individually counted. Example: George Washington shall count as two words.

g. Each whole number shall count as a word.

h. Spaces do not affect the word count.

(c) Approved Petition Forms.

1. Upon approval of the format of an initiative petition, the Secretary of State shall assign a serial number to the petition. The serial number shall begin with the last two digits of the calendar year in which the petition form is approved followed by a number in numerical sequence. For example, the first petition form approved in 2021 is assigned the serial number 21-01. The serial number assigned and approval date will be printed in the designated location on the forms as described below.

2. Upon assignment of a serial number, the Division shall include, in the designated spaces:

a. On Consitutional Amendment Initiative Petition Forms: the ballot title, ballot summary, serial number and date approved, and name and address of the sponsoring committee on Form DS-DE 155A (http://www.flrules.org/Gateway/reference.asp?No=Ref-13556, effective 10/2021) entitled "Constitutional Amendment Initiative Petition Form – Volunteer." An electronic copy in PDF format, suitable for use by volunteers or directly by voters, shall be provided to the sponsoring political committee and made available on the Division's website. Paid petition circulators, as defined below, will obtain their forms, Form DS-DE 155B (http://www.flrules.org/Gateway/reference.asp?No=Ref-13557, effective 10/2021) entitled "Constitutional Amendment Initiative Petition Form – Circulator" directly online in PDF format once they are registered with the Division pursuant to subsection (6).

b. On Constitutional Amendment Full Text Forms: the ballot title, ballot summary, article and section being created or amended, full text of the proposed amendment, serial number and date approved, and name and address of the sponsoring committee on a supplemental Form DS-DE 156 (http://www.flrules.org/Gateway/reference.asp?No=Ref-13558, effective 10/2021) entitled "Constitutional Amendment Full Text." An electronic copy shall be provided to the sponsoring political committee and made available on the Division's website. If the full text of the proposed amendment fits on a single page, it shall be clearly indicated with page numbers in the following format: Page 1 of 1" as indicated on the DS-DE 156 form. If the full text of the proposed amendment does not fit on a single page, the language can extend onto the reverse side of the paper or onto multiple sheets of paper. In such a case, the box entitled "Initiative Information" shall appear at the bottom of each page. In addition, it shall be clearly indicated that the form is multiple pages in length with page numbers in the following format: "Page [current page] of [total number of pages]" as indicated on the DS-DE 156 form. Wherever the DS-DE 155A or DS-DE 155B forms are circulated for signature, a copy of the full text of the associated proposed amendment on DS-DE 156 shall also be provided or displayed to show the voter before signing the petition.

(3) Changes. Any change to a previously approved petition form shall be submitted to the Secretary of State for review. No person or entity other than the sponsoring political committee of the previously approved petition form can submit a change or changes to the previously approved petition form. The Secretary of State must approve any material change to a previously approved petition form. A material change constitutes a change in the wording of the text of the proposed amendment, the ballot title, or ballot summary, or a change in punctuation or layout, or a change in the name of the sponsoring political committee. Any material change submitted for approval to a previously approved initiative petition constitutes a request for approval of a new petition form and shall be assigned a different serial number upon approval by the Secretary of State. Upon assignment of the new serial number, the old serial number shall be deactivated, and the forms bearing that serial number shall no longer be valid for circulation and collection of signatures.

(4) Translation. A translation into another language does not constitute a material change to an initiative petition form. The sponsoring political committee is responsible for ensuring that if translated into another language, the translation must not add or subtract from the approved English language and format of the petition and its blank entries.

(5) Reproduction. Subject to the requirements of Section (2), petition forms may be reproduced in newspapers,

magazines, and other forms of printed mass media, made available through the internet for download printing, or mailed, emailed, or faxed directly to voters, provided such forms are reproduced in the same format as approved by the Secretary of State. The petition forms may be included within a larger advertisement, provided the forms are clearly defined by a solid or broken line border.

(6) Petition Circulators.

(a) Paid Petition Circulator. An individual who collects signatures for compensation for the purpose of qualifying a proposed constitutional amendment for ballot placement is herein referred to as a "paid petition circulator." A paid petition circulator must register online with the Division of Elections through the Division's petition circulator portal at https://dos.elections.myflorida.com/InitiativePetitions/InitiativePetitionsPublic.

1. The paid petition circulator must provide his or her name, permanent address, temporary address, if applicable, and date of birth. Additionally, if the permanent address is not a Florida address, the paid petition circulator must provide a Florida address at which the circulator will accept service of process. The paid petition circulator must select each approved initiative petition for which the circulator is being paid to collect signatures. The paid petition circulator must email the Division of Elections at DivElections@DOS.MyFlorida.com with any changes to name, permanent address, and temporary address that occur subsequent to initial registration.

2. The Division of Elections shall assign a login account. The paid petition circulator shall be assigned a unique paid petition circulator registration number. If the petitions for which the petition circulator is registered are closed, and the petition circulator is no longer registered for any petitions, the Division will notify the petition circulator via the email address used by the paid petition circulator to register and inquire of the circulator's intent to remain registered. If the Division does not receive a response from the paid petition circulator within 10 days, the paid petition circulator's online registration will expire. The paid petition circulator may re-register at any time.

3. Once registered, a paid petition circulator can obtain electronic copies of DS-DE 155B and DS-DE 156 forms from the Division by logging into the petition circulator portal available on the Division's website. The portal will provide each petition circulator with electronic copies of DS-DE 155B forms in PDF format that provides the circulator's information in the designated spaces on the form. The DS-DE 155B petitions provided to the circulator will be uniquely marked for that circulator. The circulator is then responsible for producing physical copies from the electronic file.

(b) Volunteer Petition Circulators. All other individuals who collect signatures, but not for compensation, for the purpose of qualifying a proposed constitutional amendment for ballot placement are not required to register with the Division of Elections. Volunteer circulators shall circulate the DS-DE 155A form, as provided to the sponsoring political committee or downloaded and printed from the Division of Elections' website.

(7) Submission of Signed Petition Forms. All signed petition forms shall be returned to the sponsoring political committee. Only the sponsoring political committee shall submit the signed petition forms to the Supervisors of Elections for verification of signatures in accordance with Rule 1S-2.0091, F.A.C.

(8) Pursuant to Section 100.371(9), F.S., the petition sponsor shall account for all petition forms turned in by their agents. Such accounting shall be provided upon request to the Division of Elections.

(9) Effect on Previously Approved Petition Form.

(a) For volunteer petition circulators, any petition form approved by the Secretary of State prior to the effective date of this rule may continue to be used and circulated for signature gathering unless a material change, as defined above in subsection (3), to the previously approved petition form has been approved by the Secretary of State or until the sponsoring political committee notifies the Secretary of State that the committee is no longer seeking to obtain ballot position, or the registration of the sponsoring political committee has been revoked in accordance with Rule 1S-2.021, F.A.C.

(b) For forms circulated by paid petition circulators, a signature gathered on or after October 1, 2021, the effective date of this rule, may only be verified by a Supervisor of Elections in accordance with Rule 1S-2.009 if the signature is on Form DS-DE 155B, the paid petition circulator has signed the Petition Circulator's Affidavit, and the paid petition circulator was validly registered with the Division of Elections when the signature was obtained.

*Rulemaking Authority 20.10(3), 97.012(1), 100.371(2), (7), 101.161(2) FS. Law Implemented 100.371, 101.161 FS. History–New 7-2-79, Formerly 1C-7.09, Amended 7-7-86, Formerly 1C-7.009, Amended 3-5-96, 7-31-02, 3-16-06, 10-15-07, 10-13-08, 5-21-14, 10-1-21.*

**1S-2.0091 Constitutional Amendment Initiative Petition; Submission Deadline; Signature Verification.**

(1) Application and Forms. The process in this rule applies solely to constitutional amendments proposed by initiative. The form referenced herein is incorporated by reference and is available online on the Division of Elections' website at https://www.dos.myflorida.com/elections under header for forms, through the rule as adopted under www.flrules.org, or from the Florida Department of State, Division of Elections, Room 316, R.A. Gray Building, 500 S. Bronough Street, Tallahassee, 32399-0250, (850)245-6200.

(2) Submission.

(a) Signed initiative petition forms proposing amendments to the Florida Constitution shall be submitted by the sponsoring political committee (hereinafter "petition sponsor") to the Supervisor of Elections for the county of residence listed by the person signing the form.

(b) If a form submitted by a paid petition circulator is not timely submitted within 30 days after the voter signs the form, the petition sponsor is liable for the fines set forth in Section 100.371(7)(a)1. and 2., F.S. If the 30th day falls on a weekend, holiday, or other day on which the Supervisor of Elections office is closed, the petition form must be delivered to the Supervisor of Elections by the following business day. Supervisors shall submit copies of untimely filed petitions filed by paid petition circulators to the Division of Elections via file utility transfer utilizing the Supervisor of Elections portal. The Division will then review and provide notification to petition sponsors and impose statutory fines. The untimely filing of a form does not invalidate the signature on the form.

(c) If the Supervisor of Elections determines that the signer of the petition is a registered voter in another county, the Supervisor of Elections shall notify the petition sponsor that the petition has been misfiled. It is the responsibility of the petition sponsor thereafter to ensure that the misfiled petition form is properly filed with the Supervisor of Elections for the county in which the signer is a registered voter. In the case of a misfiled petition by a paid petition circulator, the filing date of the petition is the date such petition is filed with a Supervisor of Elections. The petition sponsor shall make all reasonable efforts to file in the the proper county. The initially receiving Supervisor of Elections shall submit copies of any untimely filed forms to the Division, as may be necessary pursuant to subsection (b), above, and notate the forms so as to alert the subsequent receiving Supervisor of Elections that the forms have been previously received and reported as untimely.

(d) For petition forms submitted less than 60 days before February 1, of an even-numbered year, the petition sponsor shall ensure that the forms are bundled or separated in some manner by circulator prior to submitting the forms to the Supervisor of Elections.

(3) Signature Verification.

(a) In accordance with the signature verification fee provisions in Sections 99.097(4) and 100.371(11)(b), F.S., the Supervisor of Elections for the county in which the signee is a registered voter shall verify the signatures on each initiative petition form within 60 days, except for a petition form submitted less than 60 days before February 1 of an even-numbered year, which must be verified within 30 days, after receipt of the form to ensure that the petition signer:

1. Was, at the time of signing and verification of the petition, a registered voter in the state,

2. For petition forms signed prior to April 8, 2020, has not signed the petition form more than two years prior to the date the Supervisor verified the petition. For petition forms signed on or after April 8, 2020, has not signed the petition form more than two years prior to the next February 1 occurring in an even-numbered year, and

3. Had not ever previously signed a petition form containing the identical initiative which had been verified as valid.

(b) The Supervisor shall not verify as valid a signature on an initiative petition form unless the petition is on the

proper form prescribed by the Division of Elections as specified in Rule 1S-2.009, F.A.C. and all of the following information is contained on the petition form:

1. The voter's name,

2. The voter's address (including city and county),

3. The voter's date of birth or voter registration number,

4. The voter's original signature,

5. The date the voter signed the petition, as recorded by the voter, and

6. For forms circulated by a paid petition circulator, a signed Petition Circulator's Affidavit as required by Section 100.371(5), F.S. Additionally, the paid petition circulator must have been registered with the Division of Elections to collect petitions on the date of the voter's signature.

(4) Random Sampling Not Permitted. Supervisors of Elections may not use random sampling as a method for verifying signatures on constitutional amendment initiative petitions.

(5) Recordation of Verification.

(a) After completing the signature verification process pursuant to subsection (3), the Supervisor of Elections shall report to the Division of Elections the following information:

1. The assigned serial number for the applicable initiative petition,

2. The date the signature was verified,

3. The number of valid verified signatures, by congressional district in the county,

4. The number of invalid signatures, and

5. For forms gathered by a paid petition circulator, the circulator's registration number.

(b) This information shall be submitted to the Division via data entry on the Supervisor of Elections application portal no later than 60 days after receipt of the petition by the Supervisor of Elections and payment of the fee for signature verification, except that for petition forms submitted less than 60 days before February 1 of an even-numbered year, the information must be submitted within 30 days after receipt and payment.

(6) Complaints. Any person claiming to have had his or her signature on an initiative petition form misrepresented, forged, or not delivered to a Supervisor of Elections shall use Form DS-DE 153 (http://www.flrules.org/Gateway/reference.asp?No=Ref-13555, eff. 10/2021), entitled "Form for Complaint Against Petition Circulator" to file the complaint with the Division.

(7) Filing Deadline. In order for the initiative petition to be timely filed for appearance on the ballot for the next general election, the constitutionally requisite number of verified signatures must be verified and reported to the Division no later than 5:00 p.m. on February 1 of the year in which the general election is held.

(8) Within ten days of a petition sponsor being notified that an initiative has made ballot position, the committee shall notify the Division as to whether it intends for Supervisors of Elections to continue verifying signatures on initiative petition forms.

(9) Nothing in this rule prohibits a voter from signing a successive initiative petition form containing the text of a former petition if the successive petition form has a different serial number assigned to it pursuant to Rule 1S-2.009, F.A.C.

*Rulemaking Authority 20.10(3), 97.012(1), 100.371(6) FS. Law Implemented 100.371 FS. History–New 1-6-80, Amended 12-20-83, Formerly 1C-7.091, 1C-7.0091, Amended 2-13-90, 3-5-96, 1-5-04, 3-16-06, 10-15-07, 10-13-08, 7-18-10, 9-7-11, 10-1-21.*